# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LEAGUE OF UNITED LATIN
AMERICAN CITIZENS, NEW MEXICO (LULAC),
and DENNIS W. MONTOYA,

          Plaintiffs,

vs.                                                                                No. CIV 10-0946 JB/ACT

VIRGINIA FERRERA, and
PAUL M. FISH,

          Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss on the Basis of Lack of Subject-Matter Jurisdiction, filed January 20, 2011 (Doc. 14)("Motion"). The Court held a hearing on March 7, 2011. The primary issues are: (i) whether Plaintiff Dennis W. Montoya has standing to pursue his claims against the Defendants; (ii) whether Plaintiff League of United Latin American Citizens, New Mexico ("LULAC") has standing to pursue its claims against the Defendants; and (iii) whether the Court should award the Defendants fees and costs against the Plaintiffs for bringing their claims. The Court will grant the Defendants' motion to dismiss in part and deny the motion in part. Montoya has failed to establish that he has Article III standing to assert his claims, because he has not sufficiently alleged an injury-in-fact fairly traceable to the Defendants' actions, and because he has not sufficiently alleged that a judgment in his favor would likely ameliorate his alleged injury-in-fact. LULAC has failed to establish that it has Article III standing to assert its claims, because it has not sufficiently alleged an injury-in-fact to itself. LULAC has also failed to establish standing as a representative of its members, because its

allegations do not sufficiently establish that one of LULAC's members would otherwise have standing to sue in his or her own right.  The Court will thus dismiss the Plaintiffs' claims with prejudice.  The Court will not, however, award attorneys' fees and costs to the Defendants.

## FACTUAL BACKGROUND

LULAC is an advocacy group for Hispanics; it supports Hispanic candidates for elected office in New Mexico.  See Complaint for Injunctive Relief for Deprivation of Constitutional Rights of Speech, Assembly and Political Participation ¶ 2, at 2, filed October 5, 2010 (Doc. 1).  Montoya is a Spanish-speaking, Spanish-surnamed-civil rights and criminal-defense attorney.  See id. ¶ 25, at 6.  Montoya qualified to appear on the ballot for the 2010 Democratic Party primary election for a position on the Court of Appeals of New Mexico.  See Complaint ¶ 3, at 2.  Montoya's opponent, the Honorable Linda Vanzi, New Mexico Court of Appeals Judge, accused Montoya of ethical violations.  See Complaint ¶ 4, at 2.  Judge Vanzi's disciplinary complaint was leaked to the media, and she publicized her complaint in flyers and direct mail.  See Complaint ¶ 4, at 2.

Before the primary election, Defendant Virginia Ferrera, Chief Disciplinary Counsel for the Disciplinary Board, at the behest of Defendant Paul M. Fish, Chair of the Disciplinary Board, filed a summary suspension petition against Montoya.  See Complaint ¶ 6, at 2.  A summary suspension petition differs from an ordinary disciplinary proceeding in that it is not confidential but is made public record before any investigation is completed.  See Complaint ¶ 5, at 2.  Rule 17-207 of the New Mexico Rules Annotated states:

> **A. Summary Suspension.** Upon recommendation by the Disciplinary Board, an attorney may be summarily suspended from the practice of law by the Supreme Court:
>
> > (1) upon the filing with the Supreme Court of a certified copy of a judgment finding an attorney guilty of a felony or other serious crime, as provided in Rule 16-804 of the Rules of Professional Conduct;

(2) upon the Disciplinary Board demonstrating by certificate or otherwise that an attorney has been convicted of or has pleaded guilty or no contest to a felony or serious crime;

(3) upon the filing with the Supreme Court of an order or judgment declaring the attorney to be incompetent or incapacitated;

(4) upon the Disciplinary Board demonstrating by certificate or otherwise that an attorney is incapacitated from continuing to practice law or to defend himself; or

(5) upon the filing in the Supreme Court and service upon an attorney by chief disciplinary counsel of a petition which sets forth facts demonstrating that the continued practice of law by an attorney will result in a substantial probability of harm, loss or damage to the public and that:

(a) the attorney is under investigation by disciplinary counsel for an alleged violation of the Rules of Professional Conduct or a violation of a court rule, statute or other law;

(b) formal disciplinary charges have been filed against the attorney; or

(c) a criminal complaint, information or indictment has been filed against the attorney.

Prior to suspending an attorney pursuant to this Subparagraph (5), the Supreme Court shall cause to be served on the attorney an order to show cause why the petition of chief disciplinary counsel should not be granted and requiring the attorney to appear before the court to respond to the allegations set forth in the petition. The petition shall be served on the attorney at least ten (10) days prior to the date set for the hearing unless a shorter time is ordered by the court. At any time prior to the hearing, an attorney may file an answer to the petition. A copy of the answer shall be served on chief disciplinary counsel.

Rule 17-207A NMRA (bold in original). See Complaint ¶¶ 41, 45, at 9, 10.

The Plaintiffs allege that "[p]ublicity given to the petition gave voters the impression that the [Supreme Court of New Mexico] approved the pending ethical allegations against . . . Montoya or regarded them as substantial." Complaint ¶ 6, at 2. The day after the primary election, the Supreme Court of New Mexico unanimously dismissed the summary suspension proceeding, but

the damage had already been done, and Montoya lost the primary election by a 3.5 percent margin. See Complaint ¶ 7, at 3. The Plaintiffs allege that the Defendants' summary suspension petition interfered with the Plaintiffs' constitutional rights to participate in the election process. See Complaint ¶ 8, at 3. The Plaintiffs allege that the timing of the summary suspension, the lack of evidence to support allegations of a substantial probability of harm, loss, or damage to the public, and the publicity given the petition make it reasonable to infer that the Defendants filed the petition in bad faith, with malicious intent to suppress voter turnout and to interfere with the Plaintiffs' right to participate fairly in the election. See Complaint ¶ 47, at 10-11. The Plaintiffs allege that, had the Defendants not filed the summary suspension petition, "there is a substantial probability that . . . Montoya would have won the election." Complaint ¶ 48, at 11. "Instead, . . . Montoya lost by roughly 54,000 to 58,000 votes, or 3.5 percent. Also, there was a significantly reduced turnout of voters in certain counties where . . . Montoya won the popular vote by as much as 3 to 1." Complaint ¶ 48, at 11.

## PROCEDURAL BACKGROUND

On October 5, 2010, the Plaintiffs filed their Complaint for Injunctive Relief for Deprivation of Constitutional Rights of Speech, Assembly and Political Participation. See Doc. 1. The Plaintiffs allege that the Defendants violated their rights of free speech and free assembly by interfering with the elections under color of state law. See Complaint, Count I. The Plaintiffs seek injunctive relief regarding the use of summary suspension against lawyer-candidates based on unproven allegations pursuant to rule 17-207(A)(5), and declaratory relief that "any provision which allows agents of the New Mexico Supreme Court to make public the existence, nature or content of any pending ethics investigations or unproven ethical allegations against a lawyer-candidate in the context of an election" violates the First and Fourteenth Amendments to the United States Constitution.

<u>See</u> Complaint, Prayer for Relief.

On January 20, 2011, the Defendants filed the Defendants' Motion to Dismiss on the Basis of Lack of Subject-Matter Jurisdiction.  <u>See</u> Doc. 14.  The Defendants request dismissal of the Plaintiffs' Complaint with prejudice, and attorneys' fees and costs as allowed by law.  On the same day, the Defendants filed the Defendants' Memorandum in Support of Motion to Dismiss on the Basis of Lack of Subject-Matter Jurisdiction.  <u>See</u> Doc. 15 ("Brief").  The Defendants move to dismiss the Complaint under rule 12(b)(1) of the Federal Rules of Civil Procedure.  The Defendants argue that Montoya does not have standing to bring this action, because he fails to allege an injury-in-fact that is fairly traceable to the Defendants' conduct, and because he fails to allege the likelihood that his asserted injury would be redressed by the relief sought.  The Defendants also argue that LULAC has failed to establish standing, because it fails to allege an injury-in-fact that is fairly traceable to the Defendants.  The Defendants further argue that Montoya and LULAC have failed to establish that the case is ripe for litigation.

On January 26, 2011, the Plaintiffs filed their Response to Motion to Dismiss on the Basis of Lack of Subject-Matter Jurisdiction.  <u>See</u> Doc. 16 ("Response").  The Plaintiffs argue that the standing of associations like LULAC is specifically favored in First-Amendment cases, because the First Amendment protects the act of banding together to support a political candidate.  The Plaintiffs argue that the case is ripe for litigation.  They argue that, unless they promise not to do it again, the Defendants can be enjoined.  The Plaintiffs argue that the requisite causal connection is satisfied.  They also argue that the case is not moot as long as Montoya says that he will run again.

On February 16, 2011, the Defendants filed the Defendants' Reply Brief in Support of Motion to Dismiss on the Basis of Lack of Subject-Matter Jurisdiction.  <u>See</u> Doc. 17 ("Reply").  The Defendants argue that the Plaintiffs do not sufficiently allege standing, because the Complaint fails

to show that any alleged harm is fairly traceable to the Defendants' conduct and is not the result of the independent action of a third party, and because the Plaintiffs cannot show any likelihood that their alleged injury would be redressed by a favorable decision by the Court.  The Defendants also argue that the Plaintiffs do not sufficiently allege ripeness and that the controversy is moot, because even if Montoya plans to run for office in the future, the remaining allegations do not show a reasonable expectation that Montoya will ever be subject to the same action again.

### **LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In

such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted).  See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)("A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).").  As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in the rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d

1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING STANDING

A federal court may hear cases only where the plaintiff has standing to sue.  Standing has two components.  First, standing has a constitutional component arising from Article III's requirement that federal courts hear only genuine cases or controversies.  Second, standing has a prudential component.  See Habecker v. Town of Estes Park, Colo., 518 F.3d 1217, 1224 n.7 (10th Cir. 2008)(noting that, in addition to constitutional standing requirements, "the Supreme Court recognizes a set of 'prudential' standing concerns that may prevent judicial resolution of a case even where constitutional standing exists").  The burden of establishing standing rests on the plaintiff. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998).  The plaintiff must "allege . . . facts essential to show jurisdiction.  If they fail to make the necessary allegations, they have no standing."  FW/PBS v. City of Dallas, 493 U.S. 215, 231 (1990)(internal citations and quotations omitted).  Moreover, where the defendant challenges standing, a court must presume lack of jurisdiction "unless the contrary appears affirmatively from the record."  Renne v. Geary, 501 U.S. 312, 316 (1991)(quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 546 (1986) (internal quotation omitted).  "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record."  Phelps v. Hamilton, 122 F.3d 1309, 1326 (10th Cir. 1997)(quoting FW/PBS v. City of Dallas, 493 U.S. at 231)(internal citations and quotations omitted).

-8-

1.      **Article III Standing.**

"Article III of the Constitution limits the jurisdiction of federal courts to Cases and Controversies." San Juan County, Utah v. United States, 503 F.3d 1163, 1171 (10th Cir. 2007). See U.S. Const. art. III, § 2.  "In general, this inquiry seeks to determine 'whether [the plaintiff has] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" Wyoming ex rel. Crank v. United States, 539 F.3d 1236, 1241 (10th Cir. 2008)(quoting Massachusetts v. EPA, 549 U.S. 497 (2007))(brackets in Wyoming ex rel. Crank v. United States, further internal quotation marks omitted).  "[A] suit does not present a Case or Controversy unless the plaintiff satisfies the requirements of Article III standing."  San Juan County, Utah v. United States, 503 F.3d at 1171.  To establish standing, a plaintiff must show three things: "(1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision."  Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008)(internal quotation marks omitted).

"Standing is determined as of the time the action is brought."  Smith v. U.S. Court of Appeals, for the Tenth Circuit, 484 F.3d 1281, 1285 (10th Cir. 2007)(quoting Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005)).  In Smith v. U.S. Court of Appeals, for the Tenth Circuit, the Tenth Circuit rejected a plaintiff's standing to challenge the Colorado appellate courts' practice of deciding cases in non-precedential, unpublished opinions, which the plaintiff asserted allowed courts to affirm incorrect decisions without interfering with official, "published" law.  The Tenth Circuit noted that the plaintiff had recently taken his state appeal and, therefore,

was in no position to challenge the adequacy of state appellate review in cases

> culminating in unpublished opinions unless he could show that he would in fact
> receive such review from the state court of appeals (and from the state supreme court
> as well, if it took the case on certiorari).

484 F.3d at 1285.

By contrast, in <u>Nova Health Sys. v. Gandy</u>, the Tenth Circuit found that abortion providers had standing to challenge a recently enacted Oklahoma parental-notification law on the grounds that they were in imminent danger of losing patients because of the new law.  Although finding standing, the Tenth Circuit was careful to frame the issue as whether, "as of June 2001 [the time the lawsuit was filed]," Nova faced any imminent likelihood that it would lose some minor patients seeking abortions.  416 F.3d at 1155.  Moreover, while focusing on the time of filing, the Tenth Circuit allowed the use of evidence from later events -- prospective patients lost because of the notification law after the lawsuit began -- to demonstrate that the plaintiff faced an imminent threat as of the time of filing.  <u>See</u> 416 F.3d at 1155.

### 2.    **Prudential Standing.**

"Prudential standing is not jurisdictional in the same sense as Article III standing."  <u>Finstuen v. Crutcher</u>, 496 F.3d 1139, 1147 (10th Cir. 2007).  Prudential standing consists of "a judicially-created set of principles that, like constitutional standing, places limits on the class of persons who may invoke the courts' decisional and remedial powers."  <u>Bd. of County Comm'rs of Sweetwater County v. Geringer</u>, 297 F.3d 1108, 1112 (10th Cir. 2002)(internal quotation marks omitted). Generally, there are three prudential-standing requirements: (i) "a plaintiff must assert his own rights, rather than those belonging to third parties"; (ii) "the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens"; and (iii) "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."  <u>Bd. of County Comm'rs of</u>

Sweetwater County v. Geringer, 297 F.3d at 1112 (internal quotation marks and citations omitted).

Most relevant here is the rule that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Aid for Women v. Foulston, 441 F.3d 1101, 1111 (10th Cir. 2006)(quoting Warth v. Seldin, 422 U.S. 490, 499(1975)).  There is an exception to this general rule, however, known as third-party standing or jus tertii.  Third-party standing is allowed when: (i) "the party asserting the right has a close relationship with the person who possesses the right"; and (ii) "there is a hindrance to the possessor's ability to protect his own interests." Aid for Women v. Foulston, 441 F.3d at 1111-12.

## LAW REGARDING ASSOCIATION STANDING

An organization may represent its members' interests provided it can establish that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); Am. Forest & Paper Ass'n v. EPA, 154 F.3d 1155, 1158-59 (10th Cir. 1998).  An association, representing a class, must meet a similar test for standing as individuals do.

### 1.    Injury in Fact.

To meet the test's first prong, "the association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. at 511.  Further, the Supreme Court for the United States requires allegations of "specific, concrete facts demonstrating that the challenged practices harm [plaintiffs] and that [plaintiffs] personally would benefit in a tangible way from the court's intervention." Warth v. Seldin, 422 U.S.

at 508 (emphasis added).

### 2. **Causation**.

"The issue in the causation inquiry is whether the alleged injury can be traced to the defendant's challenged conduct, rather than to that of some other actor not before the court." Ecology Rights Found. v. Pacific Lumber, 230 F.3d 1141, 1151 (9th Cir. 2000)(citing Lujan v. Defenders of Wildlife, 504 U.S. at 560)). The Tenth Circuit has distinguished between the injury-in-fact requirement and the causation requirement:

> Whether an increased risk will or will not occur due to the agency action determines whether a plaintiff has suffered injury in fact, not causation. . . . [T]he risk must be actual, threatened or imminent. However, once the plaintiff has established the likelihood of the increased risk for purposes of injury in fact, to establish causation . . . the plaintiff need only trace the risk of harm to the agency's alleged failure to follow the [law].

Comm. to Save the Rio Hondo v. Lucero, 102 F.3d 445, 451-52 (10th Cir. 1996). The relevant showing for purposes of Article III standing is injury to the plaintiff. See Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc., 528 U.S. 167, 181 (2000).

### 3. **Redressability**.

To establish redressability, "a plaintiff must . . . establish it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Comm. to Save the Rio Hondo v. Lucero, 102 F.3d at 452. A plaintiff seeking injunctive relief satisfies the redressability requirement "by alleging a continuing violation or the imminence of a future violation of an applicable statute or standard." NRDC v. Sw. Marine, 236 F.3d 985, 995 (9th Cir. 2000).

For purposes of a standing analysis, however, the court assumes that the alleged legal violations have occurred and asks whether a favorable decision in the case will redress the injury that the plaintiffs have alleged. See Comm. to Save the Rio Hondo v. Lucero, 102 F.3d at 452. To

satisfy redressability, the plaintiff need show only "the likelihood (as opposed to speculation [or certainty]) that the injury will be redressed by a favorable decision." Sw. Ctr. for Biological Diversity v. Clark, 90 F. Supp. 2d 1300, 1310 (D.N.M. 1999)(Mecham, Senior Judge).  Where the plaintiff has established that the challenged action causes him or her an ongoing injury in fact, then an order invalidating and enjoining further engagement in the challenged action will redress the injury. See Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc., 528 U.S. at 185-186.

**4.** **Germane to Its Purpose**.

The final element for the association to show is that the interests it seeks to protect are germane to the association's purpose.  See id. at 181.  Merriam-Webster Online defines germane as (i) "closely akin" and (ii) "being at once relevant and appropriate."  Merriam-Webster, Definition of Germane, http://www.merriam-webster.com/dictionary/germane (last visited May 31, 2011).

Sometime standing is confused with ripeness.  Standing and ripeness are closely related doctrines "in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention." Skull Valley Band of Goshute Indians v. Nielson, 376 F.3d 1223, 1234 (10th Cir. 2004)(quoting Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998)).  The difference between the two is that standing concerns who may bring an action while ripeness concerns when the action may be brought. See ACORN v. City of Tulsa, Okla., 835 F.2d 735, 738 (10th Cir. 1987).

## ANALYSIS

The Court will grant the Defendants' motion to dismiss in part and deny the motion in part. Montoya has failed to establish that he has Article III standing to assert his claims, because he has not sufficiently alleged an injury-in-fact fairly traceable to the Defendants' actions, and because he has not sufficiently alleged that a judgment in his favor would likely ameliorate his alleged injury-in-fact.  LULAC has failed to establish that it has Article III standing to assert its claims, because

it has not sufficiently alleged an injury-in-fact to itself.  LULAC has also failed to establish standing as a representative of its members, because it has not established that one of its members would otherwise have standing to sue in his or her own right.  The Court will thus dismiss the Plaintiffs' claims with prejudice.  Because the Court will dismiss the Plaintiffs' claims based on the Plaintiffs' failure to establish Article III standing, the Court need not address the ripeness issue.  The Court will not award the Defendants' attorneys' fees and costs, because the Court is not convinced that the Plaintiffs' action was frivolous, unreasonable, or brought in bad faith.

## I.    <u>MONTOYA HAS DOES NOT HAVE STANDING TO PURSUE HIS CLAIMS.</u>

The Court concludes that Montoya has failed to establish that he has Article III standing to assert his claims.  Montoya has not sufficiently alleged that his asserted injury is fairly traceable to the Defendants' actions.  Montoya has also not sufficiently alleged that a judgment in his favor would likely ameliorate his asserted injury.

The Defendants argue that Montoya fails to allege an injury-in-fact that is fairly traceable to their actions.  They argue that, because it cannot be presumed that the voters' decision to elect Judge Vanzi over Montoya was connected to the filing of a petition for summary suspension, or any publicity generated from the summary suspension petition, this decision breaks the chain of causation between any conduct on the Defendants' part and Montoya's electoral loss, and that, without this link, Montoya's asserted injury cannot be said to be fairly traceable to the Defendants' actions.  They also argue that there are no allegations to show the existence of the summary suspension rule causes an ongoing injury to Plaintiffs such that an order invalidating it and enjoining its future application will redress the alleged injury.

The Plaintiffs argue that the Defendants burdened and discouraged Montoya's candidacy and LULAC's support for it by making false and defamatory statements which appeared to be coming

-14-

from the Supreme Court of New Mexico.  The Plaintiffs argue that the Defendants, and not any unidentified third party, gave Vanzi's campaign misrepresentations about the pending disciplinary proceedings the Supreme Court of New Mexico's apparent stamp of approval, and that the Defendants are responsible for this conduct.

Montoya has not sufficiently alleged that his asserted injury-in-fact is fairly traceable to the Defendants' conduct.  The plaintiffs "must have suffered 'an injury in fact' -- an invasion of a legally protected interest which is" (i) "concrete and particularized"; and (ii) "actual or imminent, not 'conjectural' or hypothetical.'"  Lujan v. Defenders of Wildlife, 504 U.S. at 560.  In the Complaint, the Plaintiffs allege that the Defendants,

> under color of State law and exercising authority as agents of the New Mexico Supreme Court, deliberately and unfairly interfered with the election by making public unfounded allegations that Mr. Montoya's continued practice of law would result in a substantial probability of harm, loss or damage to the public, at a time when that could and did influence an election.

Complaint ¶ 58, at 13.  The Plaintiffs allege that Montoya's "practice of law did not . . . pose any probability of harm, loss or damage to the public[;] Plaintiffs therefore maintain that seeking summary suspension was unwarranted, in bad faith, and/or demonstrated deliberate indifference to Plaintiffs' constitutional rights."  Complaint ¶ 54, at 12.  They allege that, had the Defendants not filed the summary suspension petition, "there is a substantial probability that . . . Montoya would have won the election."  Complaint ¶ 48, at 11.  Montoya participated in the election, and he does not allege that the Defendants' interference prevented his participation in the election.  Montoya thus alleges an injury of losing the election as a result of the Defendants' actions of filing a summary suspension petition against him.  Even if Montoya has sufficiently alleged an invasion of a legally protected interest which is concrete and particularized and action, see Owen v. Mulligan, 640 F.2d 1130, 1132-33 (9th Cir. 1981)(holding that "potential loss of an election" was an injury in fact

sufficient to give Republican party official standing); <u>Bay County Democratic Party v. Land</u>, 347 F. Supp. 2d 404, 423 (E.D. Mich. 2004)(holding that party had standing to challenge voting rules that could "diminish [its] political power"); <u>Democratic Party of the United States v. Nat'l Conservative Political Action Comm.</u>, 578 F. Supp. 797, 810 (E.D. Pa. 1983)(holding that Democratic Party had Article III standing because challenged action "reduce[d] the likelihood of its nominee's victory"), <u>aff'd in part and rev'd in part on other grounds sub nom. Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.</u>, 470 U.S. 480, 489-90 (1985), he has not sufficiently alleged that this injury is fairly traceable to the Defendants' conduct.  There must be "a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560 (quoting <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 41-42 (1976)).  "In the absence of causation, [a plaintiff] has no standing to bring [a] case, and [the court] need not consider whether [the plaintiff's] injury is redressable."  <u>Habecker v. Town of Estes Park, Colo.</u>, 518 F.3d at 1224.

In <u>Habecker v. Town of Estes Park, Colorado</u>, the Tenth Circuit affirmed the district court's conclusion that Habecker lacked standing.  <u>See</u> 518 F.3d at 1220.  The Tenth Circuit found that the alleged injury of the loss of an elected position constituted an injury in fact.  <u>See</u> 518 F.3d at 1224. The Tenth Circuit then turned to the causation prong, stating that, "[t]o demonstrate causation, Habecker must show that his injury is 'fairly traceable' to the defendants' actions."  518 F.3d at 1225.  The Tenth Circuit stated:

> Habecker's recall from office resulted from the following chain of events.  First, Mayor Baudeck initiated the pledge policy, leading to Habecker's decision to sit out the Pledge based on his objection to the phrase "under God."  After Habecker ceased reciting the Pledge and explained his discomfort with the phrase "under God," the recall committee defendants acted.  Committee members then succeeded in

-16-

> collecting sufficient signatures to trigger a recall election under state law.  When this election took place, a majority voted against Habecker, effecting his removal from office.  Habecker thus contends that the Town and the recall committee caused his loss of office.

518 F.3d at 1225.  The Tenth Circuit stated that the "traceability" of a plaintiff's harm to the defendant's actions does not need to rise to the level of proximate causation, but that Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  518 F.3d at 1217 (quoting Nova Health Sys. v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005)). "If 'speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden has not been met."  Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225 (citation omitted).  "Moreover, where 'the independent action of some third party not before the court'-- rather than that of the defendant -- was the direct cause of the plaintiff's harm, causation may be lacking."  518 F.3d at 1225 (citation omitted).

> Between the actions of the defendants and Habecker's ultimate removal from office lies an indispensable act by a third party not before the court: the votes cast by voters of the town of Estes Park.  Habecker reasons that those who voted against him were motivated by his failure to recite the Pledge at Board meetings, and thus, that his injury was ultimately caused by the challenged acts of the defendants.  As evidentiary support for this argument, Habecker has adduced a collection of correspondence received by the Board and by Habecker himself between the September 14 Board meeting and his eventual recall, most of which addresses Habecker's failure to recite the Pledge and his perceived religious beliefs.  He points to this correspondence as evidence that Estes Park voters were indeed motivated by these issues.

518 F.3d at 1225.  The Tenth Circuit stated that it could not "make such an inferential leap regarding the motivations of individual voters."  518 F.3d at 1225.  "When the voters cast their ballots, the decision to vote for or against Habecker's recall was a purely private matter."  518 F.3d at 1225. "We cannot, with any degree of certainty, know what considerations motivated the 903 individuals who chose to vote in favor of recalling Habecker.  Any assumption in this regard would be a

'speculative inference' insufficient to support causation." Id. at 1225 (citation omitted).  The Tenth Circuit stated that, because it could not presume that the voters' decision to recall Habecker was connected to his position on the Pledge or to his religious beliefs, the decision broke the chain of causation between the Pledge controversy and Habecker's electoral loss.  See 518 F.3d at 1226.  The Tenth Circuit stated that, without this link, Habecker's asserted injury could not be said to be fairly traceable to the defendants' actions and did not give rise to standing to pursue his claims.  See 518 F.3d at 1226.

In Winpisinger v. Watson, 628 F.2d 133 (D.C. Cir. 1980), the plaintiffs -- supporters of Senator Edward Kennedy "in his quest for the Presidential nomination of the Democratic Party" --  appealed the district court's dismissal of their action, in which they alleged that "the defendants . . . illegally employed their public authority and expended federal funds to promote the President's renomination."  628 F.2d at 134-35.  The Plaintiffs identified the harm they "suffered as the dilution of their efforts on Senator Kennedy's behalf by the actions of the federal defendants in utilizing the vast resources available to the Administration to promote President Carter's quest for renomination," and alleged that there was a causal connection between the actions the federal defendants took and their injury.  628 F.2d at 138.  The United States Court of Appeals for the District of Columbia stated that it could not "agree that there is either an irresistible or legally sufficient connection between these matters."  628 F.2d at 138.  It stated:

> The endless number of diverse factors potentially contributing to the outcome of state presidential primary elections, caucuses and conventions forecloses any reliable conclusion that voter support of a candidate is "fairly traceable" to any particular event.  In the case before us, whether an appellant is viewed in the character of a voter, contributor, a noncontributing supporter or a candidate for a delegate post, a court would have to accept a number of very speculative inferences and assumptions in any endeavor to connect his alleged injury with activities attributed to appellees. Courts are powerless to confer standing when the causal link is too tenuous.

-18-

628 F.2d at 139.  The D.C. Circuit concluded that the plaintiffs "failed to carry their burden to demonstrate the causality prerequisite to standing" and thus lacked standing to maintain the action. 628 F.2d at 139.

In the Complaint, the Plaintiffs allege that the Defendants' action of filing the summary suspension petition interfered with the Plaintiffs' constitutional rights to participate in the election process.  See Complaint ¶¶ 8, 58, at 3, 13. They allege that, before the Defendants filed the summary suspension petition, Vanzi leaked the existence and contents of her disciplinary complaint about Montoya to the media, and publicized her complain with flyers and direct mail.  See Complaint ¶ 4, at 2.  They allege that, before the primary election, Ferrera, at Fish's behest, filed a summary suspension petition against Montoya and that publicity given to the petition gave voters the impression that the Supreme Court of New Mexico approved the pending ethical allegations against Montoya, or regarded them as substantial.  See Complaint ¶ 6, at 2-3.  The Plaintiffs allege that Montoya lost the primary election by 3.5 percent margin.  See Complaint ¶ 7, at 3.  They allege that, had the Defendants not filed the summary suspension petition, there is a substantial probability that Montoya would have won the election.  See Complaint ¶ 48, at 11.  The Plaintiffs allege that there "was a significantly reduced turnout of voters in certain counties where . . . Montoya won the popular vote by as much as 3 to 1."  Complaint ¶ 48, at 11.

"In addressing standing at the motion-to-dismiss stage of these proceedings, [the Court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the [Plaintiffs, as] complaining part[ies]."  Coll v. First Am. Title Ins. Co., No. 08–2174, 2011 WL 1549233, at *9 (10th Cir. Apr. 26, 2011)(internal quotation marks and citation omitted).  Taking the allegations in the Complaint as true, and construing the Complaint in Montoya's favor, Montoya has not sufficiently alleged that his asserted injury is fairly traceable to the Defendants' actions.

-19-

"Between the actions of the defendants and [Montoya's asserted injury of losing the election due to the Defendants' interference] lies an indispensable act by a third party not before the [C]ourt: the votes cast by voters." Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225. Montoya "reasons that those who voted against him were motivated [by the publicity of the summary suspension petition], and thus, that his injury was ultimately caused by the challenged acts of the defendants." Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225. Other than the conclusory allegation that there is a substantial probability that Montoya would have won the election had the Defendants not filed the summary suspension petition, the Complaint does not sufficiently allege facts stating that the summary suspension petition motivated the voters to vote against him. A conclusory allegation, representing no more than a speculative inference as to why voters voted against him, is not sufficient to demonstrate causation. See Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225 ("If 'speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,' this burden has not been met." (citation omitted)); Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971)("Whether the federal district court had jurisdiction of the action must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."). It is as likely that the voters voted against Montoya as a result of the publicity Vanzi generated regarding her complaint against Montoya and Montoya's alleged ethical violations as it is likely that voters voted against Montoya because of the summary suspension petition. The Court "simply cannot make such an inferential leap regarding the motivations of individual voters[;] [w]hen the voters cast their ballots, the decision to vote for or against [Montoya] was purely a private matter." Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225. See Kardules v. City of Columbus, 95 F.3d 1335, 1355 (6th Cir. 1996)(stating that "[e]ach voter's decision on the merger proposal potentially is influenced by a variety of factors, among which the threatened utility rate

increase is but one"; that, even "if it were possible, we would be reluctant to probe the minds of the voters in an attempt to quantify the effects of these various factors"; and that the court would "hesitate to state a quantum of electoral influence . . . sufficient to establish the causation element of standing. To do so would be to engage in precisely the sort of speculation that has proved fatal to Appellants' attempt to satisfy either the 'injury in fact' or 'causation' elements of standing"); Winpisinger v. Watson, 628 F.2d at 139 ("[A] court would have to accept a number of very speculative inferences and assumptions in any endeavor to connect his alleged injury with activities attributed to appellees. Courts are powerless to confer standing when the causal link is too tenuous."). Because the Complaint does not make more than a conclusory and speculative allegation of what considerations motivated the voters who chose to vote against Montoya, and because any inference that voters voted against Montoya because of the filing of the summary suspension petition would be a "'speculative inference' insufficient to support causation," Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225, Montoya has not sufficiently alleged that his asserted injury is fairly traceable to the Defendants' actions.  Montoya cannot sufficiently allege that his asserted injury is fairly traceable to the Defendants' actions, because an indispensable act by a third party not before the Court-- the voters -- lies between the Defendants' actions and Montoya's asserted injury.  See Habecker v. Town of Estes Park, Colo., 518 F.3d at 1225; Kardules v. City of Columbus, 95 F.3d at 1355; Winpisinger v. Watson, 628 F.2d at 139.  Montoya thus does not have Article III standing to pursue his claims.  See Habecker v. Town of Estes Park, Colo., 518 F.3d at 1226.

Furthermore, Montoya has not sufficiently alleged "that the existence of the summary suspension rule causes an ongoing injury to Plaintiffs such that an order invalidating it and enjoining its future application will redress the alleged injury; that is an alleged unfair election and Montoya's defeat."  Brief at 10.  "[T]he requirement of redressability ensures that the injury can likely be

ameliorated by a favorable decision."   <u>S. Utah Wilderness Alliance v. Office of Surface Mining</u>

<u>Reclamation and Enforcement</u>, 620 F.3d 1227, 1233 (10th Cir. 2010).  "The plaintiff must show that

a favorable judgment will relieve a discrete injury, although it need not relieve his or her every

injury."  <u>Nova Health Sys. v. Gandy</u>, 416 F.3d at 1158.  Montoya alleges that the Defendants'act

of filing a petition for summary suspension against him interfered with the election, causing him to

lose the election.  Montoya thus seeks to bar the Defendants from

> bringing and/or making public any petition or complaint for 'summary suspension'
> under Rule 17-407(A)(5) against any lawyer who is a candidate for elective office;
> and/or . . . further, declaring that any provision which allows agents of the New
> Mexico Supreme Court to make public the existence, nature or content of any
> pending ethics investigations or unproven ethical allegations against a lawyer-
> candidate in the context of an election bears a substantial and impermissible risk of
> unfairly interfering with the participatory rights of the candidate and all persons or
> entities who support the candidate, such as the Plaintiffs herein, in violation of the
> First and Fourteenth Amendments to the United States Constitution.

Complaint, Prayer for Relief.  The Complaint states that the facts underlying the petition for

summary suspension -- Vanzi's disciplinary complaint against Montoya and accusations that

Montoya committed ethical violations -- were already known to voters through Vanzi's publication

of the complaint and accusations "with flyers and direct mail."  Complaint ¶ 4, at 2.  Taking these

allegations as true, a judgment in Montoya's favor would not likely ameliorate his alleged injury,

because, as the Complaint demonstrates, other third parties not involved in this litigation may

publicize ethical complaints.  Dissemination of this information was independent of the Defendants'

acts and the summary suspension procedure.  Furthermore, to bring a rule 17-207(A)(5) petition, the

lawyer must already be the subject of a disciplinary investigation, formal disciplinary charges, or

criminal complaint, information, or indictment, and prohibiting rule 17-207(A)(5) petitions against

lawyer-candidates would not change the fact that lawyer-candidates might still be subject of

disciplinary or criminal proceedings, which might be known to the public through the efforts of his

or her opponents.  There is no sound reason to take away a standard tool of bar discipline when, in the rough and tumble of electoral politics, the information may come out anyway.

Because Montoya has not sufficiently alleged an injury-in-fact fairly traceable to the Defendants' actions or that a judgment in his favor would likely ameliorate his alleged injury-in-fact, Montoya has failed to establish that he has Article III standing to assert his claims.  See Coll v. First Am. Title Ins. Co., 2011 WL 1549233, at *10.  Montoya did not seek to amend his Complaint; he asked the Court only to deny the Defendants' motion to dismiss.  He thus does not offer any ways he can address the fatal flaw in his Complaint, so it appears, from all indications, that amendment would be futile.  See Schepp v. Fremont County, Wyo., 900 F.2d 1448, 1451 (10th Cir. 1990)(stating that "[t]he district court was clearly justified in denying the motion to amend if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim"); Commonwealth Prop. Advocates v. Mortgage Elec. Sys., Inc., No. 2:11–CV–214 TS, 2011 WL 1897826, at *3 (D. Utah May 18, 2011)("As amendment would be futile, the claims herein are DISMISSED WITH PREJUDICE.").  The Court will thus dismiss Montoya's claims with prejudice.

## II.    LULAC DOES NOT HAVE STANDING TO BRING ITS CLAIMS.

The Defendants argue that LULAC fails to allege an injury-in-fact that is traceable to the Defendants.  They argue that there are no facts to show that LULAC has suffered a concrete and demonstrable injury to its organizational activities which constitutes more than a simple inconvenience to its abstract social interests.  The Defendants also argue that LULAC has not sufficiently alleged that it has suffered an injury that is fairly traceable to the Defendants' conduct, and not the result of either the independent action of some third party not before the Court or Montoya's own actions.

The Plaintiffs argue that the standing of associations like LULAC is specifically favored in

First-Amendment cases.  The Plaintiffs argue that the issue is whether the Defendants burdened and discouraged Montoya's candidacy and LULAC's support for it by making false and defamatory statements which appeared to be coming from the Supreme Court of New Mexico.

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."  Warth v. Seldin, 422 U.S. at 511.  And "an association may have standing solely as the representative of its members."  Id. at 511.  In either case, an association must meet all three standing requirements of injury-in-fact, causation, and redressability.  See Warth v. Seldin, 422 U.S. at 511.

LULAC has failed to allege that the Defendants' actions invaded one of its judicially cognizable interests.  The Plaintiffs allege that LULAC is "the oldest and largest Hispanic organization in the United States."  Complaint ¶ 18, at 4.  They state that LULAC was founded as "a vanguard and advocate for Hispanics in promoting social and economic parity at all levels of American society."  Complaint ¶ 18, at 4-5.  They allege that LULAC brings litigation to protect and preserve civil liberties and constitutional guarantees for Hispanic Americans.  See Complaint ¶ 21, at 5.  The Plaintiffs allege that LULAC "remains concerned about the politically-motivated abuse of [the] summary suspension rule in the future against other lawyer-candidates, and in particular Hispanic lawyers, who may lack the financial resource to respond effectively."  Complaint ¶ 55, at 12.  The Plaintiffs do not allege that the Defendants' actions prevented LULAC from supporting its chosen candidate or drained LULAC's resources.  They allege only that LULAC supported Montoya as a candidate and that the Defendants' actions interfered with their rights to participate in the election process.  The Plaintiffs thus do not allege facts which establish that LULAC suffered "a concrete and demonstrable injury to [its] activities which drains its resources and is more than

simply a setback to its social interests." <u>Nt'l Fed'n of Blind of Mo. v. Cross</u>, 184 F.3d 973, 979 (8th

Cir. 1999)(citing <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 379 (1982)).  LULAC is involved

in a broad array of actions on behalf of Hispanics and not just on behalf of Hispanic judicial

candidates.  If the Court was to recognize LULAC's standing in its own right in this case, it may

effectively serve as a recognition that it has standing in any case in which a Hispanic has allegedly

been wronged.  <u>See</u> <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. at 379 (stating that an association

must establish a "concrete and demonstrable injury to [its] activities," and not just a "setback to the

organization's abstract social interests").  The courts have not gone that far in recognizing

association standing.  LULAC thus has not sufficiently alleged that it suffered an injury-in-fact.

An organization may represent its members' interests provided it can establish that: "(a) its

members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect

are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested

requires the participation of individual members in the lawsuit."  <u>Hunt v. Wash. State Apple</u>

<u>Advertising Comm'n</u>, 432 U.S. at 343.  <u>See</u> <u>Am. Forest & Paper Ass'n v. EPA</u>, 154 F.3d at 1158-59.

"The Supreme Court has . . . recognized that the first requirement of associational standing embodies

the Article III requirements of injury in fact, causal connection to the defendant's conduct, and

redressability."  <u>Am. Forest & Paper Ass'n v. EPA</u>, 154 F.3d 1155, 1159 (citing <u>United Food &</u>

<u>Commercial Workers Union Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544, 555 (1996)).  Although,

at the hearing, the Plaintiffs' counsel stated that Montoya was a member of LULAC, Montoya has

failed to establish that he has Article III standing.  <u>See</u> <u>Habecker v. Town of Estes Park, Colo.</u>, 518

F.3d at 1225; <u>Kardules v. City of Columbus</u>, 95 F.3d at 1355; <u>Winpisinger v. Watson</u>, 628 F.2d at

139.  Because the allegations in the Complaint do not establish that one of LULAC's members

would otherwise have standing to sue in his or her own right, LULAC does not have Article III

standing to pursue its claims as the representative of one of its members.  See Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. at 343.  Because LULAC cannot establish that one of its members would otherwise have standing to sue in his or her own right, the Court need not address whether LULAC can establish that the interests it seeks to protect are germane to the organization's purpose or whether the claim asserted or the relief requested requires participation of individual members in the lawsuit.  LULAC did not seek to amend the Complaint; it solely asked the Court to deny the Defendants' motion to dismiss.  Again, LULAC does not offer any means for fixing its problems with the first requirement for associational standing; accordingly, it appears from the record that amendment would be futile.  See Schepp v. Fremont County, Wyo., 900 F.2d at 1451.  Because LULAC has not alleged that it suffered an injury-in-fact, and because LULAC does not have Article III standing to pursue its claims as the representative of one of its members, the Court will dismiss LULAC's claims against the Defendants with prejudice.

## III.   THE COURT WILL DENY THE DEFENDANTS' REQUEST FOR COSTS AND ATTORNEYS' FEES.

The Defendants request attorneys' fees and costs.  See Motion at 1.  "It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."  Christianburg Garment Co. v. EEOC, 434 U.S. 412, 415 (1978).  For actions proceeding under 42 U.S.C. § 1983, however, the Court may, in its discretion, "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Although the Court has granted the Defendants' motion, the Court is not convinced that the Plaintiffs' action was vexatious, frivolous, or brought to harass or embarrass the Defendants.  See Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1203 (10th Cir. 2000)(addressing whether the district court should have awarded the defendants attorneys' fees under 42 U.S.C. § 1988, stating

that, "[w]hile a prevailing plaintiff ordinarily is entitled to attorney fees, a prevailing defendant in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought to harass or embarrass the defendant" and that "[t]his is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff")(internal quotation marks and citations omitted); Duprey v. Twelfth Judicial Dist. Court, No. CIV 08-0756 JB, 2009 WL 2482170, at *21 (D.N.M. July 28, 2009)(Browning, J.)(denying a request for attorney's fees under 42 U.S.C. § 1988, because "the Court [could not] say, on the record before it, that Duprey was unreasonable in asserting her due-process claims against Parsons and Perry"). Under the circumstances of this case, and based on the record before it, the Court will not award fees.

**IT IS ORDERED** that the Defendants' Motion to Dismiss on the Basis of Lack of Subject-Matter Jurisdiction, filed January 20, 2011 (Doc. 14), is granted in part and denied in part. The Court will dismiss with prejudice the Plaintiffs' claims. The Court will not award costs and attorneys' fees to the Defendants.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Arlon Stoker
Farmington, New Mexico

-- and --

Hazen H. Hammel
Hammel Law Firm, P.C.
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

-27-

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

*Attorneys for the Defendants*